# THE PLANTERS' AND MERCHANTS' BANK OF MOBILE v. WILLIS & CO.

1. On the trial of the right of property upon a claim interposed under the statute, the court have a discretion in directing the form, of the issue; *but it would seem*, that the only proper issue in such cases is an affirmation on the part of the plaintiff, that the property levied on is subject to his execution, and a denial of that fact by the claimant.

2. *Semble;* where the mortgagor has such an interest in the property as may be levied on and sold, the most appropriate step for the mortgagee to take, in order to protect his rights, is, to resort to chancery, that the interest of the mortgagor may be ascertained, and separated from that which he asserts.

3. Where the plaintiff, under the coercion of a court of law, to elect whether he will proceed in that tribunal or in chancery, dismisses his suit in equity for the same identical cause; he cannot on writ of error brought to revise the judgment in the case against him, at law, insist that the forced dismissal of his suit in equity was irregular. That proceeding did not enter into, or in any manner affect the judgment in question.

4. The right to continue a cause, the sufficiency of the showing for that purpose, and the amendment of the pleadings, are submitted to the discretion of the primary court, to be exercised with a view to the promotion of justice; and its decision in such case is irreversible on error.

5. The claimant of property to make out his title, offered in evidence a mortgage, which had become absolute; he also adduced his own affidavit, admitted by the consent of the plaintiff, stating that R M was a subscribing witness, to a conveyance of the property in question, made by the defendant in execution to the claimants. The mortgage produced was attested by R M; Held, that the mortgage was *prima facie* the *conveyance* to which the affidavit referred; and if the affidavit was insufficient to identify it, evidence was admissible to show, that R M, who is named in the affidavit, is the same who attested the mortgage, and that but one mortgage was executed to the claimant.

6. The retention of the possession of a chattel by the mortgagor, is entirely consistent with the nature of the security. But if the mortgagor retains the possession for an unreasonable length of time after the mortgage is forfeit, this may warrant the inference that the debt was paid, or that the mortgage was held up as a protection for his property against the demands of creditors. Yet in such case, it cannot be assumed as a conclusion of law that the mortgage is fraudulent.

7. An assignment made by one partner *in his name*, of a note payable to the firm, does not transfer the *legal* interest so as to authorise the assignee to sue *at law* in his own name; yet as the authority of the partner will be presumed, a right

to the note, and as an incident to it, all securities for its payment, passes to the assignee, who may maintain an action on the note in the name of the payees.

8. A witness may testify that a sum of money was paid in a draft on a foreign bank by a third person to one of the parties in the cause, although the draft was not produced at the trial—the positive knowledge of the witness, and the pre-sumption that the draft has been taken up by the bank, are sufficient reasons for dispensing with its production.

9. Where a witness states that he purchased property for another, under the authority of a letter from the latter, he cannot be permitted to give parol evidence of the contents of the letter, until he has satisfactorily accounted for its absence.

10. A surety of the claimant of property in a bond given for the trial of the right, cannot refuse to give evidence for the plaintiff in execution, on the ground of his suretyship.

11. The interest of a mortgagor in possession of personal property, may be sold under execution before the mortgage is forfeited; but if the debt intended to be secured, becomes due, and the mortgage provides that in such event, the mortgagee shall be entitled to the immediate possession of the property, or be authorized to sell the same, then he may assert his claim, put an end to the mortgagor's possession, and if the transaction is *bona fide*, the debt really due, and lien of the mortgage continuing, the property cannot be condemned to satisfy the execution.

12. Where the payees of a note, secured by mortgage, have undertaken to transfer the same, and received part of the consideration agreed to be paid therefor; if they, as mortgagees, have a legal right to the possession, they may interpose a claim to the property, (under the statute,) when levied on by execution; and though they receive full payment for their assignment pending the cause, the assignees may continue the litigation in the names of the assignors.

Writ of Error to the County Court of Lowndes.

The plaintiff in error recovered a judgment against Robert Lowe and others, in the circuit court of Mobile, and caused a *fieri facias* to be issued thereon and placed in the hands of the sheriff of Lowndes, which among other slaves, was on the 15th June, 1842, levied on the following, as the property of Lowe, viz: Jack, Chapman, Tom, Susan, Lucy, and Cæsar. These slaves were claimed by Mitchell G. Hardy, as the agent of the defendants in error, and bond given to try the right according to the statute.

In framing the issue, the parties could not agree; but after several decisions by the court upon demurrers to the counts, pleas, replication and rejoinder, (as they are called) an issue was made up to try whether the slaves in question were liable to the satis-faction of the execution, and if so, whether the interest of Lowe

was not an equity of redemption, coupled with the possession, &c. ; the claimants being mortgagees.

Several exceptions were taken by the plaintiff in execution to the ruling of the circuit court. 1. It appears that the plaintiff had filed his bill in chancery, in which he proposed (in the opinion of the court) to litigate the same matters in controversy in this cause ; and thereupon, on motion of the claimants, the court compelled him to elect whether he would proceed in equity, or at law; and under such coercion he dismissed his suit at law. 2. After the plaintiff had signified his election of the causes, upon an assurance by the claimant that he was ready for trial, the latter made an affidavit for a continuance, on the ground that a material witness was absent, and stating the facts he expected to prove by him. The court adjudged the affidavit sufficient, and offered to continue the cause, unless the plaintiff would admit that the witness would testify to the facts stated. 3. The court permitted the claimant to amend the issue on his part, after it had been made up, and the parties had announced themselves ready for trial, and the cause was about to be submitted to the jury.

The cause being put to the jury, the plaintiff proved, that the slaves in question were in claimant's possession at the time of, previous, and subsequent to the levy of the execution, also the separate value of each, and there rested the case.

The claimants then offered a deed dated 11th March, 1840, by which the slaves in controversy were conveyed to them, to secure the payment of a note of $4,369 27-100. It was therein stipulated, that if the note with the interest thereon, should not be fully paid off by the 1st March, 1841, then the mortgagees were invested with power to take possession of the slaves, and to sell them at public outcry, &c. The execution of the mortgage was supposed to be proved, by the affidavit made by the claimants for a continuance. So much of the affidavit as is material, reads thus : " that Reuben Mundy is a material witness for claimants and that he cannot go safely to trial without him ; that by him they will be able to prove the execution of a conveyance, made by said Lowe to claimants, of the property levied on, and that the debts mentioned in said conveyance are genuine and *bona fide* : said witness was a subscribing witness to the same." To the mortgage offered in evidence, the name of R. Mundy appeared as an attesting witness; but the plaintiff objected, that the facts

stated in the affidavit did not identify it or prove its execution. Thereupon, the claimant introduced the defendant in execution, who testified that Mundy, mentioned in the affidavit, was the same person who subscribed the mortgage as a witness; that he never made but one mortgage to the claimants, and that was the one now before the court. The plaintiff objected to the admissibility of this evidence, but his objection was overruled. The plaintiff then made the following objections to the admission of the mortgage. 1. Because it appeared that the subscribing witness lived in the county where the cause was tried, was then at home; and no cause shewn why his testimony, either through the affidavit or otherwise, had not been laid before the court in a more perfect form, in order to establish the execution of the mortgage, and ancillary proof from another source, was inadmissible. 2. That as the mortgage had become absolute and forfeited about twenty three months previous to the levy of the execution in the present case, and the property embraced by it during all that time, without any effort to sell the same, or otherwise foreclose the mortgage, or assume the possession, or excuse for the failure to do either of these acts, remained with the mortgagor, the lien of the claimants was entirely lost. 3. That the interest of a mortgagee, who has never had the possession of personal property, cannot be regarded and protected, on the trial of the right of property. All which objections were overruled, and the mortgage read to the jury as evidence.

Evidence was also adduced to show, that the note had been indorsed by A. Willis to James Reid; that the indorsement proposed to transfer not only the note but the mortgage also. The defendant in execution also stated, that as the agent of Reid (who was his brother in law,) he had made a payment to the claimants, by transferring to them a draft or certificate of deposit, on a bank in Edinburg; and that he was appointed an agent by a letter written to him by Reid, which was in his possession at his residence in Lowndes county. To the admission of this evidence, the plaintiff objected. 1. Because the assignment was made by A. Willis alone, and did not identify the mortgage. 2. Because the draft or certificate of deposit should be produced, or its absence accounted for. 3. Because the letter under which Lowe acted was evidence of a higher grade than his oral statement.—

But all these objections were overruled, and the evidence adjudged to be proper.

The plaintiff then showed by the witness last examined by the claimants, that as the agent of Reid, he had satisfied the claimants, their debt and mortgage, as follows, viz: on the — day of September, 1840, he paid $1,906 ; in the winter of 1841, $1,660, and in February, 1843, $750.

The plaintiff proposed to examine Mitchell G. Hardy, for the purpose of rebutting and explaining what had been proved by the claimants ; but he objected to being examined, on the ground that he was a party to the bond which had been executed upon the claim of property ; and his objection was sustained, and the plaintiff denied the right of examining him as a witness.

The evidence being closed, the plaintiff's counsel moved the coart to instruct the jury as follows: 1. That immediately after default in the payment of the debt, the claimants had the right to take possession of the mortgaged property, and to sell the same in the manner prescribed by the mortgage, and if they voluntarily permitted the mortgagor to remain in possession of the slaves for fifteen months or more, and until the execution was levied, without any effort to take them, or otherwise collect their debt, knowing that he was insolvent; such delay had the effect to destroy the lien of the mortgage as against the plaintiff's execution. 2. That, if under the circumstances supposed in the first instruction prayed, the mortgagor retained the possession of the slaves in question, James Reid became the assignee of the note and mortgage, and discharged the latter as testified by his agent, such assignment did not create a lien which can be enforced or protected on the trial of this case, against the plaintiff's in execution. 3. Conceding that Reid's right to the note and mortgage is unquestionable, and giving full credence to the evidence in respect to the assignment to him, and the payment by his agent to the mortgagees, yet his interest cannot in this proceeding be protected. 4. If the claimants have been fully paid their debt, and had relinquished and abandoned all right to proceed on the mortgage which had been executed to them, then the property in dispute was subject to condemnation to satisfy the plaintiff's execution. These instructions were refused; and the court said, that if Reid had fully paid to the claimants, the amount of the debt secured to them by the mortgage, and the latter had assign-

ed the same to him, then he had a right to use their names in defending his interest. 5. That under the issue, the plaintiff was entitled to a verdict of condemnation for the equity of redemption, at least in the slaves in controversy, be the value of the property what it may; which instruction was declined. But the court instructed the jury, that a finding by them of the value of the property and the amount of the mortgage lien remaining, if any, would be a sufficient finding under the issue, that such finding would authorise a judgment condemning the property to sale under the execution, " to all which refusals of the court to charge the jury, as well as to all the proceedings, opinions and decisions on the various questions of evidence presented to the court as above stated, the plaintiff in execution excepts," &c. The jury by their verdict ascertained the value of each of the slaves, and the judgment entry proceeds thus: " we further find an unsatisfied mortgage in favor of Anderson Willis & Co., or their assigns, for three thousand one hundred and seventy-six 81-100 dollars, but it is considered by the court that the equity of redemption coupled with the possession shewn, and admitted by the pleadings to exist and remain in the defendant in execution, Robert Lowe, are subject to sale under the said plaintiff's execution, and that the slaves levied on as stated on said plaintiff's execution be sold accordingly," &c.

R. SAFFOLD, with whom was G. W. GAYLE, for the plaintiff in error, made and argued at length the following points. 1. The plaintiff should not have been put to elect between this cause and the suit in equity; the nature and object of the cases, did not authorise it; and if it was not a case in which an election of suits could be coerced, the requisition was premature. as the defendants had not answered the bill. [3 Mad. Ch. Rep. 20; 5 Id. 18; Eden on Inj. 27–8; 1 Smith's Ch. Prac. 561–2–3; 1 Ala. Rep. N. S. 708.]

2. The court erred in its decisions in respect to the framing of the issue, and the permission to amend the same. [Aik. Dig. 277.]

3. The affidavit for a continuance, setting forth the facts expected to be proved by Mundy, was insufficient to establish the due execution of the mortgage, and the defects were not, nor

could be supplied by the evidence of Lowe. [1 Starkie's Ev. 331; 1 Phil. Ev. 473–4; 3 Id. 1293–4, C. & H's ed.]

4. Parol evidence was inadmissible to show, that Lowe was the agent of Reid, in the purchase of the debt and mortgage from the claimants—the letter under which he acted, was higher evidence. [3 Phil. Ev. 1208, C. & H's ed.]

5. Hardy, though he had executed the bond for the trial of the right of property, was clearly a competent witness for the plaintiff. He was called on to give evidence against his own interest; but if it were otherwise he could not disqualify himself.

6. The equity of redemption and possession of the slaves of Lowe, were subject to be sold under the execution, and an inquiry could not be made into the state of the accounts between mortgagor and mortgagees. [Purnell v. Hogan, 5 S. & P. Rep. 192; McGregor et al. v. Hall, 3 S. and P. Rep. 399; Perkins and another v. Mayfield, 5 Porter's Rep. 182; Williams and Battle v. Jones, 2 Ala. Rep. N. S. 314.]

7. The facts proved in respect to the mortgage, the continuance of the mortgagor in possession, without any attempt on the part of the mortgagees to sell the slaves, or otherwise interfere with them, make it fraudulent in law, and consequently inadmissible as evidence.

8. The mortgage being void as against the mortgagees, cannot be sustained for the benfit of Reid, conceding that he became an assignee in good faith.

9. If the mortgagees have been fully paid and have no interest in the mortgage, the claim interposed by them cannot be sustained merely for the benefit of Reid, who although he may have satisfied the debt, is not an assignee which a court of law will protect.

T. WILLIAMS, for the defendants in error, insisted, that the circuit court properly compelled the plaintiff to elect whether he would proceed in this case, or his suit in equity; but even an error in this respect is immaterial, as it cannot at all affect the regularity of the judgment or the proceedings previous thereto.

In respect to the issue formed, it was clearly correct. [Perkins and another v. Mayfield, 5 Porter's Rep. 182.] And though the court did not, in so many words determine, that the equity of redemption and mortgagor's possession, were subject to the exe-

cution, yet such was in legal effect the decision, both in dictating the issue, and in charging the jury.

The facts stated in the affidavit for a continuance, were clearly sufficient to prove the execution of the mortgage; especially when connected with the evidence of Lowe, which identified the mortgage as the only paper of the kind which Mundy attested, and the one to which the affidavit referred.

The objections to the mortgage did not make it invalid in law, they addressed themselves rather to the jury than the court; but do not show that it became inoperative as a lien.

Hardy might, if he thought proper, have submitted to be examined as a witness, but as he was interested in the result of the cause, he could not be used as a witness against his consent.

There was no necessity for producing the letter of Reid to Lowe, authorising him to purchase of the claimants the debt and mortgage. The act had been consummated and not dissented from by any of the parties; and this was sufficient to dispense with the production of any written proof of authority.

The fact of the continued possession of the mortgagor, after the forfeiture of the mortgage, did not affect the lien which the mortgage created, either as it respects the claimants or their assignee. And it was entirely competent for the claimants, on behalf of Reid, to assert in their own names (as the parties in whom the legal title is vested) a right to the property; the more especially as Reid had not fully paid them, until after the assertion of their claim.

COLLIER, C. J.—When a claim to property, levied on by execution, is interposed in the manner prescribed by the statute, the court before which it shall be pending, is directed to require the parties to make up an issue under such rules as it may prescribe, for the trial of the question of right. [Aik. D.g. 167–8.] The form of the issue, is a matter within the sound discretion of the court, and is not ascertained by any certain rules; consequently the affirmations and denials of the parties preparatory to a trial by jury, are not the appropriate subjects of a demurrer. If the parties cannot agree, the court should dictate the terms of an issue, adapted to the case to be tried. This is all that can be required, and where this is done, neither party can object on error, that he was required to join in an issue expressed in words

different from what he proposed. The opposite conclusion, would go to take from the court the discretion which the statute confers, and occasionally embarrass its action, without benefit to any one.

In the present case, the issues were sufficiently broad, to tolerate the admission of any evidence, to show that the claimants had such a legal title to the property in question, that it could not, against their consent, be sold to satisfy the plaintiff's execution; and at the same time, they were so framed as to allow the plaintiff to prove that the defendant in execution had such an interest in the slaves as was the subject of a levy and sale for the payment of his debts. In fact it would seem, that an affirmation on the part of the plaintiff, that the property levied on was subject to his execution, and a denial of that fact by the claimant, was the only proper issue in all cases. We are much inclined to question what was said in Perkins and Elliott v. Mayfield, [5 Porter's Rep. 182,] in respect to the form of the issue, where the possessory right of the mortgagor and his equity of redemption, is sought to be condemned against a claim interposed by the mortgagee. Where the mortgagor has such an interest as may be sold under execution, the mortgagee never should take a step so hazardous as to assert his claim at law; and if he does, and the plaintiff, as he may, affirms that the property is liable to his execution, it will be competent for him to show that the mortgage is invalid, or that the interest of the mortgagor may be levied on and sold. To prevent such a result, it is in general, the safer course for the mortgagee to seek the interference of chancery " for the purpose of ascertaining and separating the interests of the mortgagor" from that which he asserts. [Williams and Battle v. Jones, 2 Ala. Rep. 319.]

In respect to the order of the circuit court, requiring the plaintiff to elect, whether he would proceed in the trial at law, or in a suit in equity, which he had instituted, involving the same matter of controversy, we think its regularity is a question not now presented for revision. That order is inconclusive of the cause in chancery, until that court shall act upon it, and give effect to the forced election of the plaintiff. This being the case, it is not the subject of revision by an appeal or writ of error; besides, if it were, the writ of error which has been sued out, does not complain of it, but seeks only the reversal of the judgment on the trial

of the right of property.   The direction in regard to the suit in equity, could not in the slightest degree have affected the result of the case before us; whether right or wrong, was wholly immaterial to its decision.   The reversal of the judgment will not annul the order of election; that will still continue operative as far as the *court of law could make it so*, until it is set aside by some direct action.

But the plaintiff cannot be irreparably prejudiced by the order of the circuit court; if erroneous, (as we incline to think it is,) it may be vacated by *mandamus* addressed to that tribunal, or the court of chancery.   And the latter may be required to proceed as if no election had ever been made; and this, although a decree dismissing the bill may have been rendered under the influence of the plaintiff's election.   These conclusions seem to us to result so clearly from the nature of the subject, that they do not need the aid of argument to illustrate them.

The continuance of a cause and the amendment of the pleadings are matters within the discretion of the court; in the decision of which it must always be influenced by the circumstances of the particular case.   And though the court may exercise its discretion unwisely, it is not competent for an appellate tribunal to revise the matter so as to administer more complete justice. The fact that the plaintiff had elected to proceed at law, did not take from the court the right to entertain a motion to continue the cause; nor did an announcement by the claimants, that they were ready for trial, impair, to any extent, its powers in respect to the formation, or modification of the issue.   It is always competent for the court to permit a party to withdraw his assent to proceed to trial at any time before it is entered upon, and also to allow the allegations of the parties to be changed, even so as to require different proof.   The court, will however, take care that the opposite party shall have ample time to prepare for the modified state of the case.

The question of the sufficiency of the *affidavit* for a continuance cannot be here considered: the discretionary powers of the circuit court, we have seen, make its decision conclusive upon every point relative to the subject.   It was, however, a fair matter of inquiry before the jury, what facts did the affidavit establish.   We think the affidavit *prima facie* identified the mortgage made by Lowe to the claimants.   True, it does not describe it

by its technical designation, but says, in general terms, that Reuben Mundy was a subscribing witness to a conveyance of the property in question, made by the defendant in execution, to the claimants. A mortgage is certainly a species of conveyance, although subject t) a condit on, by the performce of which it becomes void; that offered in evidence is attested by R. Mundy and embraces the slaves which were levied on, and according to every reasonable intendment, must have been the conveyance referred to by the claimants. The presumption cannot be indulged, that the property was transferred by two distinct conveyances to the claimants, and even if such were the fact, the general description of the mortgage in the affidavit, would warrant its admission as evidence.

But if the facts stated in the affidavit were insufficient to identify th mortgage and establish its execution, the additional testimony adduced, proved that the Robert Mundy mentioned therein, was the person who attested the mortgage in question, and that it was the only one executed by the defendant in execution, to the claimants. This evidence, it seems to us was unobjectionable. It was not offered to prove that, which the subscribing witness was alone competent to establish, but its tendency was to show that the mortgage was the conveyance to which the affidavit alluded: this being shown, the facts which it was admitted Mundy would prove, were entirely sufficient to make the mortgage evidence. The testimony of Lowe, instead of being intended to take the place of Mundy's, was intended to give point and direction to the facts disclosed in the affidavit, and if necessary to strenghten them.

The fact that the mortgagor of personal property retains possession, is not an act fraudulent in law, nor evidence of fraud, where the conveyance stipulates that the possession shall remain with him. [United States v. Hooe, et al. 3 Cranch's Rep. 75.] It may be laid down generally, that in the case of a mortgage of chattels, the retention of possession by the mortgagor, up to the period of forfeiture, is entirely consistent with the deed, although there is no express stipulation to that effect; and of consequence it does not make the security *prima facie* fraudulent. [D'Wolf v. Harris, 4 Mason's Rep. 515; Barrow v. Paxton, 5 Johns. Rep. 258; Haven v. Low, 2 N. Hamp. R. 13; Dickinson v. Cook, 17 Johns. Rep. 334; Bissell v. Hopkins, 3 Cow. Rep. 166; Holmes,

et al. v. Crane, 2 Pick. Rep. 607; Conard v. The Atlantic Trust Co. 1 Peters' Rep. 449; Claybornes v. Hill, 1 Wash. Rep. 177; Magee v Carpenter, 4 Ala. R 469.] The correctness of these propositions is not controverted, but it is insisted that it was incumbent upon the claimants, upon the default of the mortgagor to pay the debt by the day stipulated, to take immediate possession of the slaves in controversy; and that the failure to do so, without a sufficient excuse therefor, rendered the mortgage fraudulent in law, and therefore void. It may be conceded, that it is in general the duty of the mortgagee to avail himself of his security, when the mortgage becomes forfeit, and if he delays the institution of a suit for an unreasonable time, or fails to possess himself of the mortgaged property, the inference will be, in a controversy between himself and a stranger, that the debt has been paid; but this is a mere presumption, and may be repelled by evidence. [Dougherty v. Kercheval, 1 Marsh. Rep. 52.]

It is definitively settled in this State, that if the seller of personal property who has made an unconditional bill of sale, retains the possession, the transaction is *prima facie* fraudulent, and to free it from such a legal imputation, as against a creditor of the vendor, the purchaser must show special reasons why the possession did not follow the evidence of transfer. [Hobbs v. Bibb, 2 Stewart's Rep. 54; Ayres v. Moore, Id. 336; The P. & M. Bank of Mobile v. Borland, at this term.] But the same rule cannot be made to apply to a mortgage of personal chattels, after the failure of the mortgagor to pay the debt intended to be secured. Unless the mortgage give such a right to the mortgagee it cannot be exercised by him, but the remedy by which the security is made available, is by suit in equity, where a decree may be obtained for a foreclosure and sale. Where a power of sale is conferred, the mortgagee may, upon default, take possession of the property, if he can do so without committing a trespass. Yet in the first case, if he fails to bring a suit, or in the latter, to take possession immediately, it cannot be assumed as a conclusion of law, that the debt was paid, or the mortgage fraudulent. If the transaction was fair in its inception, it cannot be denounced because the mortgagee has not availed himself of his rights, *secundum stricti juris*. The retention of possession by the mortgagor for an unreasonable length of time, may warrant the inference that the debt was paid, or that the mortgage is held up as

a protection for his property against the demands of creditors. But these are conclusions which may be repelled by proof, that the indulgence of the mortgagee, was compatible with fair dealing, and induced by no intention to favor the mortgagor to the prejudice of his creditors. It must, from the very nature of the case, be a question of fact, for the solution of the jury, what length of time unexplained, would make the mortgagor's possession conclusive evidence of fraud on the part of the mortgagee. [Patten v. Smith, 4 Conn. Rep. 450.]

In Magee v. Carpenter, [4 Ala. Rep. 469,] there was a mortgage of goods for a debt payable by instalments, with power to sell at the happening of the first default. The court say, " As the possession of the mortgagor was consistent with the terms of the deed, no presumption of fraud arises from the mere fact of the possession remaining with him after the execution of the deed; unless such possession continue after the happening of the last default by the failure to pay the last note. Then such possession would doubtless be a badge of fraud." This latter remark may perhaps be misapprehended, and be taken as an intimation, that if the mortgagee omits to avail himself of his security for any length of time after he is authorised to do so, his neglect shall be deemed a fraud upon the mortgagor's creditors. Nothing more was intended to be said, than that the retaining the possession for an unreasonable time, was a mark or sign of fraud in the sense, and to the extent we have already stated.

But if the law required that the change of possession should be instantaneous upon the mortgagor's default, and made its continuance *prima facie* evidence of fraud, and conclusive unless explained, still the mortgage was admissible evidence. In fact, it should be permitted to go to the jury, in order to let in explanatory proof to show its validity was unimpaired.

From the view taken of the point we are considering, it necessarily follows that the court should not, as a question of law, have instructed the jury that the possession of the mortgagor with the mortgagee's permission, destroyed the lien of the mortgage, as against the plaintiff in execution. But all the circumstances and facts should have been submitted to the jury, that they might determine whether the influence of the continued possession, was not outweighed and controlled by countervailing proof. Suppose the mortgagees agreed to receive the in-

terest on the debt at stated times, and give further day for the payment of the principal, or stipulated with a third person for the transfer of the debt and mortgage, upon being paid the amount of it, in instalments or by a certain time, would the mortgage be avoided by such an arrangment. These are questions we merely suggest; as it is unnecessary we will not answer them. The creditors of the mortgagor can be rarely injured by the delay of the mortgagee; for if necessary to enable them to collect their demands, they may go into equity, and enforce a foreclosure and sale of the mortgaged property. [Chambers, et al. v. Mauldin, et at. 4 Ala. Rep. 477.]

It is immaterial in what form the note and mortgage were assigned to Reid, as no assignment could transfer such a legal interest in the mortgaged property, as would enable the assignee to assert a right at law in his own name ; and an equitable title might be transferred verbally, especially if the papers were delivered. True, an indorsement of the note in the name of A. Willis alone, would not have authorized the assignee to have maintained an action thereon, yet a sale of the note by A. Willis, would have made him its proprietor in equity, and have entitled him to sue at law in the names of the payees ; and the mortgage would have followed the transfer of the note, as a security for its payment. The assignment being made by one of the partners, the legal inference is that it was authorized, and if necessary, it might be intended that it was actually assented to by all. It is perfectly clear, that however considered, the evidence on this point was admissible.

As to the draft upon, or certificate of deposit in some bank in Edinburg, its production could not have been required. The witness testified from his own knowledge that a payment was thus made, and stated the amount of it without reference to the paper ; besides the draft or certificate being paid or placed to the credit of the claimants, or their order, (as we must presume) and thus placed beyond their reach, its production, for these reasons, was properly dispensed with. [Planters' and Merchants' Bank of Mobile v. Borland, at this term.]

Whether the defendant in execution was really the agent of Reid in the purchase of the note, or whether his agency was simulated, was an important inquiry for the jury. If he paid the debt with his own means, the property would be discharged from

the mortgage, and of course liable to the plaintiff's execution.— The question then arises, whether the letter under which the defendant in execution professed to represent Reid, should have been produced at the trial. It is laid down that a writing, where one exists, is generally constituted the exclusive medium of proving the transaction to which it relates ; and whenever it turns out, either on the direct or cross examination, that a writing exists with regard to a transaction, which the law esteems as the best evidence, it must be produced, or its absence accounted for. If this is not done, all inferior evidence that may have been given, will be stricken out and disregarded. [3 Phil. Ev. C. & H's ed. 1207, *et post*.] This rule, however, it is said, is not universal, and that it is competent, to prove the transaction, that receipts and some other writings are designed to evidence, by the parol testimony of witnesses, without accounting for their non-production. But this can only be done where the witness knows the fact independently of and without reference to the paper. [2 Phil. Ev. C. & H's ed. 547, *et post*, and cases there cited.] But where the contents of *any written instrument*, as such, are sought to be proved, it must be produced, or its absence accounted for. [2 Phil. Ev. C. & H's ed. 549. 3 Id. 1208, 1211.]

In the present case, the letter of which the witness spoke, was the only evidence he had of authority from Reid to purchase the note and mortgage; its contents must have been relied on as proof of his agency, and according to the general rule we have stated, should have been produced. This conclusion seems to us to result so clearly from what has been said, as to relieve us from the necessity of amplifying upon the point.

The fact that Hardy was the claimant's surety, in the bond executed preparatory to the trial of the right of property, did not excuse him from giving evidence at the instance of the plaintiff in execution. He was not a party of record, and his liability was but subsidiary, depending upon a non-performance of the condition of the bond by the claimants ; so that even were it conceded, that one could not be required to testify about a matter, where his evidence might subject him to a debt or duty, the witness in question had no sufficient excuse for withholding his testimony. This point was, in principle, determined by Gary, et al. v. Frost & Dickinson, at the last term. That was a suggestion against a sheriff, that he could have made the money on a *fieri facias* with

due diligence. The sheriff proved that an execution in favor of another plaintiff had been levied on the property of the defendant, and a sale thereof made : thereupon the plaintiff proposed to prove by a deputy as well as *surety* of the sheriff, that the judgment on which this latter execution issued had been paid. It was insisted that the witness was not bound to testify, and as he objected, should be excused ; but this court held, that the fact that his evidence might be adverse to his interest, would not deprive the plaintiff of the benefit of it.

In Magee v. Carpenter, *ut supra*, it was said that the interest of a mortgagor in possession might, before default, be sold under a *fieri facias* against him ; that after default, if the mortgage conferred upon the mortgagee, an immediate right of possession, he had a legal title, which he could assert against the creditors of the mortgagor whose executions were levied on the property. In that case an execution was levied on the mortgaged property, the mortgagee gave bond and security to try the right, and it was held that the levy could not take away the legal right of possession ; that the mortgagee could then assert it for the first time, notwithstanding he had hitherto acquiesced in its enjoyment by the mortgagor. Here is an authority directly in point. In the present case, the mortgage gave to the mortgagee the right to take possession of the property in question, and sell it, upon default being made in the payment of the debt intended to be secured ; the condition of the mortgage had become forfeit before the execution was levied, and the legal right of the mortgagee complete. Under these circumstances, the mortgagor had a possession during the pleasure of the mortgagee only, together with a mere equity of redemption. So long as the possession was permitted, there was an interest which could be sold under execution, but the possession being terminated, there was nothing left but an equity, which is not the subject of a levy : and the interposition of a claim of property, under the statute, puts an end to the possession, as the case cited indicates.

It then follows, that the mortgagor's interest in the slaves could not, as against the claimants, be sold for the satisfaction of the plaintiff's execution, unless the mortgage was fraudulent, had lost its efficacy, or the debt it was intended to secure was paid off, or otherwise discharged.

Whether, if the claimants had fully divested themselves of all interest in the note and mortgage, previous to the levy of the execution in this case, they could have claimed the property for the benefit of their assignee, it is unnecessary to inquire. The proof shows that although they may have stipulated for a transfer of the note, and received a part of the money before they interposed their claim, yet it was not until some time afterwards that they were fully paid. There is nothing in the record to show that the transfer was complete, until full payment was made ; and it can not, in the absence of proof, be intended that such was the case.

Assuming it to be true, that the claimants had a legal interest to defend at the time this proceeding was instituted, there is no pretence that it was not rightly commenced. The receipt of full payment from Reid subsequently, does not affect the cause, but the assignee may use the claimant's names for the protection of interests, which by contract he had derived from them. It is needless to make a particular application of the law upon this point, to the charge prayed, as the cause must be sent back for another trial.

This view is decisive of the many points in this cause which we have felt it our duty to notice. Without attempting to recapitulate, it has been shewn, that the circuit court erred, at least, in permitting parol evidence of the letter from Reid to Lowe, and in excusing Hardy from giving evidence, when called by the plaintiffs.

The consequence is, that the judgment is reversed, and the cause remanded.