**REEVES v. ROSEBOROUGH, Clerk of Court of Civil Appeals, et al. (No. 4135.)**

(Supreme Court of Texas.　Austin.　Jan. 7, 1925.)

**1. Appeal and error ⊙⟹23—Court of last resort exclusive judge of its own jurisdiction.**

Court of last resort is exclusive judge of its own jurisdiction.

**2. Appeal and error ⊙⟹23—Validity of appeal and jurisidiction of appellate court are to be determined by that court.**

Generally, validity of an appeal and jurisdiction of appellate court are to be determined by that court.

**3. Appeal and error ⊙⟹23—Clerk of Court of Civil Appeals without authority to refuse to forward appellant's application for writ of error because mandate had issued.**

Clerk of Court of Civil Appeals was without authority to refuse to forward appellant's application for writ of error addressed to Supreme Court, where he had complied with all requirements of law and rules of procedure, because mandate had issued under Rev. St. art. 6057; Supreme Court being exclusive judge of its jurisdiction or effect of issuance of mandate.

Petition for mandamus by John J. Reeves against E. T. Roseborough, Clerk of the Court of Civil Appeals, and others. Petition dismissed.

I. N. Williams, J. F. Wilkinson, Hiram Brown, and J. A. Ward, all of Mt. Pleasant, for relator.

PIERSON, J.　This is an original proceeding by relator, John J. Reeves, to require respondent, Hon. E. T. Roseborough, clerk of the Court of Civil Appeals for the Sixth Supreme Judicial District of Texas, to forward to this court relator's application for writ of error in the case of John J. Reeves v. State, 258 S. W. 577.

Relator alleges a full compliance with all requirements of law and the rules of procedure in preparing and filing with respondent Roseborough, as clerk of said court, for transmission to this court, his said application for writ of error, which was addressed to this court, but that respondent Roseborough declines to file and forward same to this court for its consideration.

It appears from relator's written argument in support of his motion for leave to file his petition for mandamus, that respondent the clerk of the Court of Civil Appeals declined to file the petition for writ of error upon the ground that mandate had issued under article 6057, R. S.; that being the concluding article of chapter 2, title 98, relating to removal from office of county and certain district officers. The article reads:

"When so decided, unless the judgment be for some cause set aside or suspended, the mandate of the court shall issue within five days after the judgment of the court is rendered."

Relator complains that respondent Roseborough has substituted his judgment for that of the Supreme Court as to whether this court has jurisdiction over the case upon relator's application for writ of error.

[1-3] It is not at all necessary to discuss the question at length.　A court of last resort is the exclusive judge of its own jurisdiction, and necessarily must be.　It is generally held that the validity of an appeal and the jurisdiction of the appellate court are to be determined by that court.　3 C. J. p. 371, § 128, and cases cited; Dillard v. Wilson (Tex. Civ. App.) 137 S. W. 152.　Respondent Roseborough could not determine for this court its jurisdiction over the case or the effect of the issuance of mandate under article 6057.　However, in this case, upon leave being granted to relator to file his petition for a writ of mandamus, respondent Roseborough filed and forwarded to this court relator's petition for writ of error.　While the petition for mandamus is to be dismissed, we have deemed it advisable to write this short opinion on it.

The petition is dismissed.

---

**WITHERSPOON et al. v. TERRY et al.
· (No. 602–4085.)**

(Commission of Appeals of Texas, Section A. Jan. 28, 1925.)

**1. Chattel mortgages ⊙⟹278 — Chattel mortgagees seeking to foreclose, and to recover for services rendered, have burden of showing that charge made for such services was reasonable.**

Chattel mortgagees seeking in foreclosure suit to recover compensation for services rendered, and for expenditures while they were in possession of property under agreement authorizing them to sell it for defendants' account, *held* required to show that such charge for services was reasonable.

**2. Chattel mortgages ⊙⟹107—Whether chattel mortgagees of garage in possession under agreement were to conduct it as going concern or sell it as whole, held for jury.**

Whether chattel mortgagees of garage in possession under bill of sale or contract with mortgagor were to conduct business as going concern or sell it as whole, *held* question for jury.

**3. Chattel mortgages ⊙⟹169, 249—Mortgagees in possession of garage and stock under bill of sale given by mortgagors held not chargeable for conversion nor precluded from suing to foreclose.**

Mortgagees of garage and part of equipment, who went into possession under bill of

sale given by mortgagors on remaining stock and equipment for purpose of converting it into cash for mortgagors' account, *held* to hold as bailees or trustees, and not chargeable with conversion of stock not covered by mortgage so long as they acted honestly and diligently, nor were they precluded from bringing suit to foreclose while so conducting business, on theory that remedies were inconsistent.

Error to Court of Civil Appeals of Seventh Supreme Judicial District.

Suit by Vern Witherspoon and others against W. H. Terry and others, wherein defendants filed cross-action. Judgment for plaintiffs was on appeal reversed by 'Court of Civil Appeals (255 S. W. 471), and plaintiffs bring error. Judgment of Court of Civil Appeals affirmed.

W. M. Knight, F. T. Roloson, and W. H. Russell, all of Hereford, for plaintiffs in error.

Carl Gilliland, of Hereford, for defendants in error.

CHAPMAN, J. This case has been before the Amarillo Court of Civil Appeals twice, and two original opinions and two opinions on motion for rehearing and one opinion on dissent have been written by that court. These opinions may be found in 239 S. W. 300, and 255 S. W. 471.

On May 1, 1920, Vern Witherspoon and three associates sold to W. H. Terry and his sons, J. G. and R. A. Terry, a garage in Hereford, Tex., for a consideration of $5,-000 cash and a note for $6,695, executed by the three Terrys, due November 1, 1920, and secured by a chattel mortgage executed by J. G. and R. A. Terry on all the tools, fixtures, and appliances of the garage and further secured by a deed of trust given by W. H. Terry on certain lands in Gaines county. A short time prior to October 20, 1920, W. H. Terry advised Witherspoon and his associate, E. W. Kinney, that he would not be able to pay the note at maturity, and about that time had a conversation with them in reference to their assisting him in selling the garage, and on October 20, 1920, J. G. and R. A. Terry executed to Witherspoon and his associates a bill of sale to the entire stock of merchandise located in the garage, consisting of tires, tubes, engine parts, bolts, tap screws, automobile accessories, and also one acetylene welding outfit and burning-in stand, and contemporaneous with the bill of sale plaintiffs and defendants, J. G. and R. A. Terry, executed this contract:

"This agreement made and entered into this the 20th day of October, 1920, by and between Roy Terry and Guy Terry, parties of the first part, and Vern Witherspoon, Geo. Beams, G. E. Webb, and E. W. Kinney, parties of the second part:

"Whereas, first parties are indebted to the second parties, which is evidenced by a promissory note, and whereas for the purpose of aiding in the discharge of the said indebtedness first parties have this day given second parties a bill of sale to certain personal property now located in the Renfro building in Hereford, Texas:

"Now, therefore, it is hereby agreed that said bill of sale is not to be received in discharge of the indebtedness, nor is it to in any way affect the other securities of the said indebtedness, but it is agreed that second parties will take charge of the property named in the said bill of sale, and will use their effort in selling said property and turning same into cash or into other property which second parties are willing to accept as cash, and the proceeds of said property are to be used as follows: First the necessary expenses of the same are to be paid, including reasonable pay for the services of either member of the second parties who attends to same; then all above what is necessary to pay on said expenses, shall be applied to reduce the said indebtedness to second parties."

And from that date for about 20 days defendants and plaintiffs together carried on the business of the garage; after about the 10th of November, the Terrys had nothing more to do with running the business of the garage, and on the 23d of November, plaintiffs brought suit against all the defendants for their note and for a foreclosure of their two chattel mortgage liens, the bill of sale being treated as a chattel mortgage, and the deed of trust lien, and pleaded that from the time they took possession of the garage up to the time of the trial, which was June 2, 1922; they had run it for the use and benefit of defendants and made an accounting of all moneys received and paid out by them during that time, and further pleaded that the services of the plaintiffs while in charge of and running said business were reasonably worth the sum of $150 per month for each month so employed in connection therewith, and also pleaded that they went into possession of the garage under an agreement with the defendants that they would use their best efforts in trying to find a purchaser for it, and that plaintiffs should keep the same open and a going concern for the purpose of applying the proceeds that might be obtained from the sale of said business or from conducting the same to the payment of the notes of defendants, and that it was agreed that the plaintiffs should be paid a reasonable compensation for their services in assisting in and conducting the said business.

Defendants answered, denying that they had entered into an agreement with plaintiffs that plaintiffs either jointly with defendants or by themselves might take charge of said business and run it as a going concern, and in their cross-action asked for damages against plaintiffs for conversion of the entire stock of goods, fixtures, tools, and appliances of the garage.

[1] In answer to special issues the jury found that on or about the 18th of October, 1920, W. H. Terry consented or agreed that Witherspoon and Kinney or either of them

jointly with Terry Brothers might take. possession of the furniture and fixtures, the stock of merchandise consisting of accessories and repair parts, tools and machinery, acetylene generator, and Ford burning-in stand, located and situated in the Hereford garage building, and conduct or assist in the management of the business, and also found that W. H. Terry on or before October 18, 1920, consented or agreed that the possession of the furniture and fixtures, the stock of merchandise consisting of repairs and parts, tools, machinery, acetylene generator, and Ford burning-in stand situated in the garage building be given to the plaintiffs for the purpose of securing the plaintiffs, and apply the proceeds derived from such business on the payment of plaintiffs' note and the necessary expenses in conducting the business. Judgment was rendered for plaintiffs for the amount due on the note and for a foreclosure of each of their three liens, and that defendants recover nothing on their cross-action. In the original opinion on this appeal the Court of Civil Appeals reversed the judgment of the district court for the reason that no proof was offered that the amount charged by plaintiffs for their services in conducting the business after they took charge of it was a reasonable charge. On motion for rehearing in a majority opinion it was held that a general demurrer should have been sustained to plaintiffs' petition on the ground that it was inconsistent for plaintiffs in error to bring suit to foreclose their mortgage while they were conducting the business under a verbal and written agreement with the Terrys. Judge Boyce in a dissenting opinion agreed that the case should be reversed on the ground stated in the original opinion, but disagreed with the holding of the majority on the motion for rehearing. We think, as did all the members of the Court of Civil Appeals, that the case must be reversed on the ground stated in the original opinion, and refer to that opinion and cases there cited to sustain our holding. But, as to the other questions discussed in the majority and dissenting opinions on motion for rehearing, we think the dissenting opinion correctly states the general principles of law applicable to this case.

In Zadek v. Burnett, 176 Ala. 80, 57 So. 447, from the Supreme Court of Alabama, we find this language:

"Independently of any provision in the mortgage, the rule seems to be. established that a chattel mortgagee, in lawful possession of the mortgaged property, is entitled upon an accounting to be credited with all reasonable and actual expenses incurred in caring for it. 7 Cyc. 91, and cases cited. This we take to be true, however, only where the mortgagee holds possession as bailee or trustee for the mortgagor, and not where he assumes to hold in his own right and for his own uses."

In Chambers v. Mauldin, 4 Ala. 477, is this statement with reference to the status of the mortgagee in possession: "But if a mortgagee take possession, he is considered in equity, in some measure, in the light of a trustee, and accountable for the profits."

In Merritt-Allen Co. v. Torrence (Iowa) 102 N. W. 154, the defendant agreed to take over the property of the corporation, sell it to the best advantage, pay himself out of the proceeds the amount owing him and the other indebtedness, and if anything was left, to return it to the corporation to be divided among the stockholders. A bill of sale was accordingly executed to the defendant and he proceeded to operate the business, which was a wood working plant, in the regular way for several months, and then sold it as a whole. Suit was brought against the defendant for an accounting, and the court, in discussing the case, made this observation:

"Conceding that the statute as to trusts is applicable to personal property, yet the evidence is such as. to show that defendant took the entire property as security for the indebtedness owing him, and not absolutely, and that the transaction, was, in effect, a mortgage."

[2, 3] The jury found that Terry Brothers were the owners of the stock of goods and fixtures, and found that their father, W. H. Terry, agreed that plaintiffs in error might take possession of the fixtures and merchandise and conduct or assist in the management of the business, for the purpose of securing them, and applying the proceeds derived from such business on the payment of the note and the necessary expense in conducting the business. In view of the. fact that the contract between Terry Brothers and plaintiffs in error is not entirely clear as to whether the business was to be conducted as a going concern or sold as a whole, we think the issue as to what the agreement was between Terry Brothers and plaintiffs in error on this question should be submitted to the jury. If it be found that the owners of the property agreed that plaintiffs in error should take charge of it and conduct it as a going concern, then plaintiffs in error were in possession of the property under a contract wholly independently of their rights under the mortgage, and which specially provided that the property was not received in discharge of the indebtedness, and that its reception was to in no way affect the rights of plaintiffs in error under the mortgage. While the above authorities are not exactly in point, yet, as we understand them, plaintiffs in error, under the conditions mentioned, would be in possession of the property as bailees or trustees of the Terrys, and that so long as they acted honestly and diligently in carrying out the trust they could not be held for conversion, and they would not be precluded from protecting their rights under the mortgage because they were acting in such capacity.

If the Terrys had placed the business in the hands of third parties to conduct as a

going concern, with the understanding that the net proceeds of the business should be applied to the payment of the debt due plaintiffs in error, it would not be contended that such third parties could be sued for conversion so long as they carried out the terms of the trust in good faith, and we can see no reason why the rights of the mortgagee in possession under the same kind of contract should be different to that of third parties, when the contract under which they took possession provided that such possession should in no way affect their rights under the mortgage. To hold that the rights of plaintiffs in error under the mortgage were in any way destroyed by going into possession of the property under a contract like the one mentioned would be to deny to parties the right to contract with reference to property in which they are interested as they see fit. If Terry Brothers agreed that the business should be conducted by plaintiffs in error as a going concern, then plaintiffs in error, in conducting the business and in attempting to foreclose, did nothing with reference to the property that they were not authorized to do under contract with the Terrys, and as long as plaintiffs in error acted in good faith under the mortgage and the contract of possession, the Terrys should not complain.

We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.