## ANDERSON, ET AL. v. HOOKS, ET AL.

1. Although a mortgagee of personal property with the power to take possession of and sell the same upon the mortgagor's default, may interpose a claim under the statute to try the right, when it is levied on by execution, yet he may waive his legal right, and resort at once to a Court of Equity, where all interests may be adjusted, and justice more completely administered.

2. *Semble,* that Chancery will entertain a suit to adjust the pretensions, or settle the priorities of conflicting claimants, where there is a cloud hanging over the title to lands which would prevent them from selling for a fair market value.

3. The second section of the statute of frauds, in declaring that every gift, &c., of lands, &c., had or made, &c., " to the intent or purpose to delay, hinder or defraud creditors, shall be utterly void," &c., is declaratory of the common law, and does not derive additional potency from the insertion of the word " purpose ;" it might be omitted, and still the same meaning would be accorded to the act.

4. Where one conveys property by way of mortgage or deed of trust to secure a debt really and *bona fide* due, and by the same instrument provides, that after it is satisfied a simulated debt professedly owing to another person, shall be paid from the proceeds of the same property, the deed is not void as to the real creditor, if he did not participate in the fraud of the grantor. A deed may be void in part, not only at the Common Law, but by statute also, and stand good for the residue.

5. The embarrassment of a debtor, his relationship to his creditor, and the contiguity of their places of residence to each other, are not suffiicient to warrant the inference that the creditor participated with the debtor in the intent to defraud his creditors, by a deed which he executed in part for that purpose, in which the debt of the creditor and another simulated debt was provided for.

Writ of Error to the Court of Chancery sitting in Macon county.

THE defendants in error were the complainants below. In their bill it is alledged that the complainant, Hooks, with others whose names are mentioned, on the 3d April, 1841, made and subscribed a promissory note, jointly with the defendant, Harris, payable to the Branch of the Bank of the State of Alabama at Montgomery, for the sum of $12,175 15. six months after date; that the note was made solely for the benefit of Harris, and subscribed by the co-makers as his sureties.

On the 12th May, 1842, Harris, for the purpose of securing Hooks from loss, in consequence of his suretyship, executed a deed, by which he conveyed to him certain real and personal estate, with authority to sell the same, or so much as might be necessary to extinguish the debt, whenever the Bank might obtain a judgment against Harris and Hooks, or Hooks alone. It is also recited in the deed, that Harris was indebted to Thomas Stocks the sum of eleven thousand dollars, due by note, which he was also desirous to secure; and it was therefore provided, that if the debt to Stocks was not paid in eighteen months from the date of the deed to Hooks, &c., then the latter was authorised to sell the property conveyed, and appropriate the proceeds to the extinguishment of the debt due Stocks—the amount due the Bank being first paid off.

In August, 1842, a judgment was rendered in favor of the Bank against Harris and Hooks upon the note intended to be provided for by the deed. On the 21st February, 1842, Reuben Anderson and the defendant below commenced an action at law, in the Circuit Court of Macon against Harris; and on the 8th June, of the same year, caused an ancillary

attachment to be issued against his estate, for the sum of $4,390. This attachment was levied on the property in question, returned to the Circuit Court and made part of the cause in which it was issued; and in October, 1842, a judgment was rendered against Harris, for $4,990, damages, besides costs. On the 15th November, next succeeding the judgment, a writ of *fieri facias* was issued thereon, and placed in the hands of the sheriff of Macon, which was levied on the 26th of November, on a portion of the property embraced by the deed to the complainant, Hooks, which the sheriff has advertised for sale.

It is stated in the bill, that some of the slaves conveyed to Hooks, have been sold since the execution of the deed, to satisfy the lien of executions which had attached previous to its date; that the lands have been regularly sold under the deed for the sum of $1900; and that the residue of the property conveyed, is not more than an adequate security for what is due the bank. The slaves were advertised for sale under the power conferred by the deed; but the execution of Anderson being levied upon them, it was believed that they would not sell for a fair price, and the sale was consequently postponed.

Complainant, Hooks, further alledges, that his co-surety is dead, and his estate insolvent; that Harris is also insolvent, so that he alone will have to provide for the payment of the debt to the bank.

The bill prays an injunction against Anderson, his agents, &c. *Further*, that the trusts of the deed may be established and carried into effect; that the claims of the parties interested in the property in question may be ascertained and adjusted, and the priorities settled. That the debt mentioned in the deed may be first paid and satisfied out of the property thereby conveyed, according to the order which it prescribes. That an account be taken of what is due the complainant, and that the equity of redemption of Harris, in the property in question, be forever barred and foreclosed. And that such orders and decrees be made, as may be proper to give to the complainants the relief they seek.

The statements of the bill, so far as they depend upon writings, are supported by exhibits.

Anderson exhibited his cross bill, alledging that the notes recited in the deed from Harris to Hooks as being payable to Stocks, were without any consideration, and void as against the creditors of Harris. *Further*, that he had no other means of proving the truth of these allegations, and of the several matters charged in the bill of the complainant, than by a resort to the consciences of the complainants and Harris, &c. Thereupon he prayed that they might answer his cross bill, &c.

The Chancellor rendered a decree, adjudging that there was no real indebtedness from Harris to Stocks, and that the deed to Hooks was thus far intended to delay and hinder creditors in the collection of their debts, and of consequence void—made the appropriate references to the Register—directed that the debt due to the Bank should be first satisfied, and that then the judgment of Anderson should be paid from the proceeds of the property conveyed by Harris to Hooks.

J. E. BELSER, for the plaintiff in error, insisted—1. That the original bill should have been dismissed, for want of equity; because Hooks should have interposed a claim to the personal property levied on by Anderson's execution, as directed by the statute, and had a trial at law. [4 Ala. Rep. 477; 5 Id. 770.]

2. It was denied that the debt described in the deed, as due to Stocks, had any real existence; this threw upon the complainants the burden of proving it was *bona fide*, and founded upon a good consideration. No proof was adduced to sustain it; the legal conclusion is, that it was gratuitous and void, and the deed being void in part, under the statute of frauds, it it void *in toto*. [Clay's Dig. 254, § 2; 5 Cow. Rep. 548; 4 Johns. Rep. 356; 15 Id. 458; 6 Hill's Rep. 438; 3 Ala. Rep. 444; Long on Sales, 122; 7 Ala. Rep. 269.] If the decree in favor of Hooks was allowed to stand, then the case would present the strange anomaly of two decrees in the same cause, the one favorable to one, and the other adverse to another complainant.

3. Stocks failed to answer the cross bill, and it was taken for confessed as to him. This authorized the Chancellor to decree fully against him. The recitals in the deed are not

evidence against Anderson, who was a stranger thereto. [2 Paige's Rep. 164; 4 Ala. Rep. 258; 5 Id. 9; 6 Id. 299.]

4. Harris was largely indebted at the time he executed the deed to Hooks—they both lived in the same town, were brothers-in-law, and Stocks, who resided in Georgia, was Harris' uncle. These facts should have put Hooks upon inquiry, and must be regarded as a notice to him of all they import. A fraudulent intent is inferable, in general, where the party conveying property is indebted at the time. [Peters' C. C. Rep. 460; 2 Mason's Rep. 252; 7 Peters' Rep. 348.]

5. The relationship of the complainants, coupled with the fact that Harris conveyed all his property, threw upon Hooks the *onus* of supporting the *bona fides* of the transaction. It is admitted that there are cases where a deed may be void in part, and good for the residue; but here the deed is void by statute, and consequently inoperative for all purposes. [6 Taunt. Rep. 368; 9 Pick. Rep. 176.]

McLester, for the defendants in error, said, it was admitted that the deed was fraudulent as to Stocks, but it is not pretended, or rather cannot be, from the proof in the cause, that Hooks participated in the fraud.

The deed is several, the interests secured by it are distinct. As to Hooks, it was made and delivered in good fath, to indemnify him as the surety of the grantor for a *bona fide* debt; consequently, it may be thus far good, though it be void as to Stocks. "A grantee who is influenced by honest purposes, cannot be prejudiced by the *mala fides* of his grantor." [7 Ala. Rep. 142; 11 Wheat. Rep.　　; 4 Rand. Rep. 282; 8 Taunt. Rep. 245; Chit. on Con. 229; 6 Taunt. Rep. 369; 1 Wend. Rep. 228; 14 Mass. Rep. 248; 9 Pick. Rep. 176.]

COLLIER, C. J.—There can be no question but it is competent for a mortgagee with a power to take possession of and sell personal property, upon the mortgagor's default, when the property is levied on after the forfeiture of the mortgage, to interpose a claim and try the right as the statute provides. [Planters' and Merchants' Bank of Mobile v. Willis & Co. 5 Ala. Rep. 770.] Yet it by no means follows,

that the mortgagee may not waive his legal right, and resort at once to a court of equity, where all interests may be adjusted, and more ample justice dispensed. We have repeatedly held, that although it is competent for a mortgagee to execute a power of sale contained in a mortgage, yet he is not bound thus to avail himself of his security. He may, if he prefer it, go into Chancery, and pray a foreclosure and sale, under the sanction of the court. [Chambers, et al. v. Mauldin, et al. 4 Ala. Rep. 477; The Heirs and Adm'rs of Hitchcock v. U. S. Bank of Penn., 7 Ala. Rep. 38.] In this latter case it was decided, that a mortgagee who has purchased the equity of redemption, and thus united in himself *prima facie* the legal and equitable estate, may apply to a court of equity for a foreclosure and to quiet his title.

Where, in the language of some of the books, there is a cloud hanging over the title of lands, which would prevent it from selling for a fair market value, Chancery frequently entertains suits to adjust the pretensions, or settle the priorities of conflicting claimants. The object of the complainant's bill proposes nothing more.

Although Hooks is made a trustee by the deed of Harris as it respects Stocks, and could perhaps have been treated as such by the Bank, had it asserted a right to the security, yet he is, so far as it provides an indemnity for him, a mortgage with a power of sale. The deed preferred him to Stocks, and even if the latter had been a *bona fide* creditor, whose demand was not controverted, it would still have been competent for Hooks to have sought a decree of foreclosure in equity. So that in any view in which the cause can be considered, the bill is not obnoxious to the objection, that it does not disclose a case for equitable interposition.

The second section of the statute of frauds, in declaring that every, gift, grant or conveyance of lands, tenements, or hereditaments, goods or chattels, or of any rent common, or profit out of the same, by writing or otherwise, had or made and continued of malice, fraud, &c., to the intent or *purpose* to delay, hinder, or defraud creditors, shall be utterly void, &c., is but declaratory of the common law. The introduction of the term "purpose" into the act, does not impart to it any additional potency. It is only the synonym for design,

intention, aim—is but a mere expletive, intended to convey the idea which the legislature had in view more strikingly, and might be stricken from the act without affecting its interpretation in any manner.

In respect to the indebtedness of Harris to the Bank, and the suretyship of Hooks as stated in the deed, so far from being disproved, or rendered doubtful, it is abundantly apparent from the evidence in the record; and if the purpose of the deed was to secure its payment directly to the Bank, or to provide Hooks with the means for that purpose, it would be confessedly unobjectionable. But it is supposed, that as the object of the deed was to provide for a simulated debt, which was a fraud upon the creditors of the grantor, it cannot be recognized for any purpose, but must fail *in toto*.

It was said by Lord Hobart, in Norton v. Simmes, (Hob. Rep. 12 c. page 48,) "that the statute is like a tyrant, when he comes he makes all void; but the common law is like a nursing father, makes void only that where the fault is, and preserves the rest." See also Maleverer v. Redshaw, 1 Mod. Rep. 35. This remark of Lord Hobart has been often quoted to prove, that a contract void in part by statute, is void *in toto*, but it establishes no such principle. It is a mere declaration as applied to the case then under consideration, that where a statute prescribes the form of an obligation, and enacts, that one taken in any other form shall be void, if the terms of the statute are departed from, no obligation is incurred by the party undertaking to bind himself. Thus far, there can certainly be no objection to it.

In Kenison v. Cole, 8 East's Rep. 236, the instrument in question was a bill of sale and mortgage of a ship, which by statute was declared to be "utterly null and void, to all intents and purposes." In the writing was a covenant to repay the money lent. Mr. Justice Lawrence remarked, that the decision of Lord Hobart did not apply to different and independent covenants and conditions in the same instrument, which may be good in part and bad in part, and that the undertaking to repay the money, was good as a personal covenant.

Lord Chief Justice Gibbs, addressing himself to the consideration of the argument, that if a deed be void in part, it must

be void as to the whole, says, "if the objection had been derived from the common law, it is admitted that it would not be the consequence. But it is urged, that the statute makes the whole deed void. The truth is, there is no difference between a transaction void at common law, and void by statute. If an act be prohibited, the construction to be put on a deed canvcying property illegally, is, that the clause which so conveys is void, equally, whether it be by statute or common law. But it may happen, that the statute goes further, and says that the whole deed shall be void, to all intents and purposes; and when that is so, the court must so pronounce, because the legislature has so enacted; and not because the transaction is illegal. I cannot find in this act any words which make the entire deed void, &c. I think this grant of that interest in land, which, by the terms of the grant, is to be applied to a charitable use, is void; and that the deed, so far as it passes other lands, not to a charitable use, is good." This is the clear result of the English authorities, say the Supreme Court of the United States, in The United States v. Bradley, 10 Peters' Rep. 343. In this latter decision, it was said, " There is no solid distinction in cases of this sort, between bonds and other deeds containing conditions, covenants, or grants, not *malum in se*, but illegal at common law; and those containing conditions, covenants or grants, illegal by the express prohibitions of statutes. In each case the bonds or other deeds are void as to such conditions, covenants or grants which are illegal, and are good as to all others, which are legal and unexceptionable in their purport. The only exception is, when the statute has not confined its prohibitions to the illegal conditions, covenants, or grants; but has expressly, or by necessary implication, avoided the whole instrument, as to all intents and purposes." To the same effect is my opinion in Bates and Hines v. The Bank of the State, 2 Ala. Rep. 485-6-7-8. See the cases there cited.

Prince v. Shepard, 9 Pick. Rep. 176, if not identical in its facts to the present, is strikingly analagous in principle. The court there said, where property is assigned by a debtor to two persons, by one instrument, to " hold to them respectively, in the proportions in which the debts due to them respectively bear to each other," and the assignment is prov-

ed to be fraudulent and void, as to one of the assignees, it is nevertheless valid in respect to the other, who is innocent of the fraud ; their interest in the fund being several, though if the instrument were valid in the whole, they would take as tenants in common.

We need add nothing to these citations. They show the law to be well settled, that although a deed may be void in part, by a statute, yet it will be valid for the residue, unless the statute avoids it for all purposes. The statute of frauds merely declares, that the " gift, grant, or conveyance," if made with the intent or purpose to defraud creditors, is " clearly and utterly void." Now a single deed may evidence a gift, grant, or conveyance, to different individuals, and of distinct objects, and may be invalid as to one of the grantees without affecting the other. In respect to the consideration, they may be wholly disconnected, so that the fraud of the one could not implicate the other in any dishonesty of purpose. The facts of the present case do not as we have seen, show that Hooks lent himself to Harris, to enable him to defraud his creditors; and he cannot be prejudiced, because the deed for his indemnity, makes provision also for the pretended debt to Stocks.

Hooks, then, for any thing appearing to the contrary, being a *bona fide* mortgagee, without notice of an intended fraud, cannot be divested of his surety by the *mala fides* of Harris, the mortgagor. To make a grantee answerable for the covinous intention of the grantor, it must appear that he participated in it. [Stover v. Herrington, et al, 7 Ala. Rep. 142.] The embarrassment of Harris, his relationship to Hooks, and the contiguity of their residences, are not sufficient, under the circumstances, to warrant the imputation of fraud to Hooks.

This view is decisive of all the points raised at the bar, and the consequence is, that the decree is affirmed.