MARKET NAT. BANK and others *v.* HOFHEIMER and others.

*(Circuit Court, E. D. Virginia.* December, 1884.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS—HOW FAR VALID.

A deed of assignment may be valid as to *bona fide* debts which it secures, and void as to fictitious and fraudulent debts attempted to be secured thereby.

2. SAME—PARTNERSHIP ASSIGNMENT.

An insolvent partnership makes a deed of assignment of specific property to a trustee, which provides for the payment equally and without preference of certain alleged creditors named in Schedule A, with the amounts purporting to be due them, and provides that, after the payment in full of the creditors in Schedule A of the amounts stated to be due them, certain creditors in Schedule B shall be paid the amounts therein stated to be due them. *Held:* (1) That the deed conveyed integral amounts to a series of integer creditors, and its provisions were several by the terms of the grant; (2) that as it did not provide for the contingency of some of the debts in Schedule A being fictitious, which they in fact proved to be, the amounts which were intended for them were not disposed of by the deed, remained in the grantor as to attacking creditors, and were subject to their claims.

3. SAME—PREFERENCES—CONSTRUCTION OF ASSIGNMENT.

That deeds of assignment giving preferences are to be construed strictly, and courts of equity will not interpolate phrases to carry out a possible intent to give preferences otherwise than as expressed.

4. SAME—SETTING ASIDE ASSIGNMENT—EFFECT.

That a successful attack by creditors upon a deed of assignment does not enlarge its operation as to those who claim under it.

5. SAME—ATTACKING CREDITOR ENTITLED TO BENEFIT.

    Creditors attacking a deed of assignment and unearthing a fraud intended to be consummated thereby, are entitled to the rewards of their vigilance.

6. SAME—VIRGINIA RULE.

    *Wallace* v. *Treakle*, 27 Grat. 479, followed as to such attacking creditors.

In Equity.

*Tunstall & Thom*, for complainants and petitioners.

*W. G. Elliott* and *Borland & Brooke*, for defendants.

*Wm. H. White*, for trustee.

HUGHES, J.    The defendant firm, Hofheimer, Son & Co., of Norfolk, Virginia, executed a deed of assignment, dated the twenty-third of July, 1883, to Theodore S. Garnett as trustee. They conveyed a stock of goods in a wholesale shoe business which they had been conducting in a double tenement, Nos. 84 and 86 Water street. They conveyed not only the goods then in their building, but their books, accounts, and choses in action to this trustee, who is also a defendant in this suit. The assignment was for the benefit—*First*, of certain persons described as creditors of the firm, enumerated in Schedule A annexed to the deed, who were to be paid in full, and whose claims aggregate $88,-714; and, *second*, of another set of creditors enumerated in Schedule B, whose claims aggregate $34,320, and who were to be paid after the creditors of Class A had been satisfied. The creditors upon Schedule A, and the debts acknowledged by the deed to be due them respectively, were as follows:

| | |
|---|---:|
| Henshaw & Co., | $25,844 09 |
| Burruss, Son & Co., | 6,250 00 |
| The Exchange Nat. Bank of Norfolk, | 10,000 00 |
| Ottenburg Bros., | 3,796 54 |
| Nathan Metzger, | 700 00 |
| A. E. Jacobs, | 100 00 |
| Isaac Gutman, | 15,624 18 |
| Isaac Moritz, | 12,500 00 |
| Henrietta Samuels, | 9,400 00 |
| L. W. Roberts, | 4,500 00 |
| | $88,714 81 |

The property which was conveyed by the deed has been sold and proceeds collected, and has produced in cash the sum of $66,307.

No other property was conveyed by this deed, and the deed did not purport to convey any other than the goods and choses in action that have been mentioned. The deed contained no clause for the contingent benefit of any other creditors than those enumerated in Schedules A and B. It made no provision for a large number of creditors who were not embraced in either schedule; none for the benefit of the three complainants, or the three petitioners in the suit, whose claims aggregate about $32,900, and are evidenced by negotiable notes. Fraud is not apparent on the face of the deed. It is conceded that the claims of all the creditors named in the two sched-

ules are *bona fide*, except of the four hereafter to be mentioned; and that the holders of the *bona fide* claims, and the trustee, T. S. Garnett, had no notice of the fraud affecting the four exceptional claims.

Soon after the execution of the deed, a bill was filed in this court by Edward Henshaw & Co., a beneficiary under it, against Hofheimer, Son & Co. and Garnett, trustee, on behalf of complainants and of all other creditors named in Schedules A and B, praying, among other things, that the trust should be administered under the supervision and control of this court. In that suit there were several consent decrees; among others one entered on November 26, 1883, making a distribution of a portion of funds in hand among the creditors of Class A. But there were excepted and withheld from this distribution the sums that would have been due to Isaac Gutman, Isaac Moritz, Henrietta Samuels, and L. W. Roberts, the aggregate of whose claims acknowledged and provided for by the deed was $42,024; and whose dividends, withheld by the decree, would have been about $31,-209 in amount. To the decree of partial distribution entered in the suit brought by Henshaw & Co., just mentioned, the complainants in the present suit, by their counsel, consented.

The dividends of these four persons—Gutman, Moritz, Samuels, and Roberts—were withheld in consequence of the filing of the bill in the present suit. This bill charges that the deed of assignment under consideration was fraudulent in respect to the debts, or pretended debts, for which it provided in favor of those four persons, and was, as to those debts, a deed to hinder, delay, and defraud creditors. The suit was brought under section 2 of chapter 175 of the Code of Virginia, which authorizes creditors at large to bring suits in equity just as creditors by decree or judgment may do in other jurisdictions. The bill makes Gutman, Moritz, Samuels, and Roberts parties defendant. These persons have answered, and in their answers admitted of record that the debts were not due to them, and waive all claim under the deed. Among the agreed facts in this case is the concession that the deed was, as to the four exceptional claims, fraudulent; that these four persons were parties to the fraudulent intent; and that the deed was made to hinder, delay, and defraud creditors.

None of the creditors of Hofheimer, Son & Co., mentioned in the Schedules A and B, have made assault upon the deed on the ground of the latent fraud which it contained. They all claim under it, and none of them have repudiated it. Nor has any other creditor of this defendant firm assailed the deed, except the three complainants and the three petitioners in this suit. The fraud of the deed was detected and has been unearthed and assailed in court by them alone, so far as the proofs and pleadings in this cause speak upon the subject.

The complainants in this cause contend that, having by their vigilance, and at their own cost and risk, saved from distribution in payment of fictitious debts, the fund now in the hands of the trustee amounting, I believe, to a principal of $31,209, they are entitled to

receive this fund, which is the fruit of their labor; and that the creditors in Schedule A, whose claims were *bona fide* are entitled to receive no more than they would have done if the four fraudulent claims had been valid; and that the creditors in Schedule B can take, as against complainants no other surplus than such as would have accrued to them if all the debts in Schedule A had been valid, and, as such, satisfied in full.

On the principle, *id certum est quod reddi certum potest,* I consider that, as the value of the property conveyed by Hofheimer, Son & Co. is now known to be $66,307, or only about 74½ per cent. of the debts named in Schedule A alone, the deed of July, 1883, in effect and result provided that the fund arising from the property conveyed should be paid as follows, namely, (I use approximate amounts merely for illustration:)

| | |
|---|---:|
| To Henshaw & Co., | $19,262 |
| Exchange Nat. Bank, | 7,460 |
| Burruss, Son, & Co., | 4,766 |
| Ottenburg Bros., | 2,848 |
| N. Metzger, | 558 |
| A. E. Jacobs, | 74 |
| I. Gutman, | 11,650 |
| I. Moritz, | 9,323 |
| H. Samuels, | 7,013 |
| L. W. Roberts, | 3,362 |
| | $66,307 |

If the incapacity of the fund to pay off these creditors of Class A had been known when the deed was executed, the provisions as to the contingent payment of the creditors in Schedule B would have been omitted; or, if inserted, would have been nugatory.

The deed conveyed integral amounts to a series of integer creditors. It was several by the terms of the grant. It did not provide for the contingency of some of the debts of Class A turning out *per fas aut nefas* to be *nil.* It did not provide that, if any of these debts in Schedule A should prove to be fictitious, then the fund arising from the non-payment of them should go, first to the creditors of Class A, and the residue, after paying these, to the creditors of Class B. The deed was silent as to such a fund. It cannot be made to provide for such a fund, except by the interpolation into it of words that are now wanting, and are necessary for the purpose. This fund was not in its contemplation, and is a *casus omissus*. Being silent as to this fund, the deed made no disposition whatever of it, as against assailing creditors. Not being disposed of at all by the deed, the fund remained in the grantors unassigned, and subject to the claims of any creditors of Hofheimer, Son & Co., who should pursue it; the most vigilant in the pursuit obtaining priority of right over it, according to the degree of their vigilance. It is useless to refer to authorities to show that a deed of assignment may be valid as to *bona*

*fide* debts which it secures, and void as to fraudulent debts. See *Billups* v. *Sears*, 5 Grat. 31, decided in 1848. See, also, as to other states, *Harris* v. *De Graffenreid*, 11 Ired. 89; *Anderson* v. *Hooks*, 9 Ala. 704; *Troustine* v. *Lask*, 4 Baxt. (Tenn.) 162.

Much learning and ability were displayed at bar in discussing this feature in the deed of Hofheimer, Son & Co. Many collateral principles of law incidentally relating to this feature have been ably presented and elucidated. I do not feel called upon to review these arguments, and the authorities cited in support of them, by learned counsel. This deed conveyed specific property, for the payment of several debts particularly described, in equal ratio. It provides that the amounts "set down opposite the several names in said Schedule A are to be paid equally and in full, without priority one above the other." Some of the debts were fictitious; and, as already said, the deed made no provision for the fund released from the payment of them. Does it require reasoning or authority to prove that the deed failed to make conveyance at all of that fund? We cannot interpolate omitted clauses in a deed, to suit the developments of a transaction like that of this defendant firm. Deeds of preference are to be construed strictly. They are in conflict with that prime and favorite maxim of chancery courts that "equality is equity." When they fail to make conveyance of property to creditors intended to be preferred over others, it is neither the duty nor disposition of the courts to supply, by construction, phrases necessary to effect their purpose. If express and appropriate language is wanting in them for such purpose, then the grant fails and falls.

Authority is not wanting for the propositions of law thus announced. See *Smith* v. *Post*, 3 Thomp. & C. (Sup. Ct. N. Y.) 647; *Prince* v. *Shepard*, 9 Pick. 184; *Green* v. *Morse*, 4 Barb. (Sup. Ct. N. Y.) 344, 345; *Tate* v. *Liggat*, 2 Leigh, 106. In the case of *Prince* v. *Shepard*, Chief Justice PARKER said: "We also consider this deed as capable of being construed as a several conveyance to each of the grantees in proportion to his debt." The learned judge was commenting on a deed in which the Princes had, by deed of assignment, secured a debt which was *bona fide*, and had also secured a debt to one Hodges, which was fictitious and fraudulent, as in the case at bar. The chief justice continued: "The attaching officer had a right to attach, as belonging to the debtors, so much of the property as was fraudulently assigned to Hodges, that being still, in regard to the creditors, left in the Princes," etc. As showing that in the event of a grant in favor of a fraudulent and fictitious claim being embodied in a deed it is no grant at all, the property pretended to be conveyed remaining in the grantor as absolutely as if no deed had been made, see *Prince* v. *Shepard, supra; Shipe* v. *Repass*, 28 Grat. 729; *Boynton* v. *McNeal*, 31 Grat. 462; *Cox* v. *Wilder*, 2 Dill. 45.

It being clear that the quotas of the fund in the hands of the trustee dedicated to fictitious debts were not assigned at all as against

assailing creditors, but were "left in" the Hofheimers, and the complainants in their suit having established a lien upon it from the filing of their bill, the fund so intercepted by this suit must be disposed of in accordance with the rules laid down by the Virginia supreme court of appeals in *Wallace* v. *Treakle*, 27 Grat. 479. I will so decree.