# Hayes *v.* Westcott.

*Statutory Detinue, by Mortgagee against Sheriff.*

1. *Mortgage of stock of goods and fixtures, with reservation of possession, and power to sell goods.*—A mortgage executed by an insolvent debtor, conveying his stock of goods and the fixtures in his store, reserving the possession to himself until the maturity of the debt, with power to sell the goods "until demand," is void on its face as to the goods (Code, §1730), but valid as to the other property, it being admitted that the mortgagee had no knowledge or notice of the insolvency.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

This action was brought by Mrs. E. C. Hayes against W. D. Westcott, to recover certain articles of personal property, particularly described in the complaint; and was commenced on the 20th of April, 1889. The articles sued for were the fixtures in a drug-store in the city of Montgomery, which had belonged to Witherspoon & Williams while they conducted the business as partners, and afterwards to Williams individually, who had bought out the interest of his co-partner. Witherspoon & Williams had bought the drugs, fixtures and good-will of the business, in June, 1886, from Geo. W. McDade, executing their three promissory notes for the purchase-money; and on the dissolution of the partnership, on the 21st of November, 1888, Williams assumed all the outstanding indebtedness, including the balance due on these notes to McDade. On the 5th April, 1889, McDade commenced suit by attachment against Williams, to recover the balance due on these notes;

[Hayes v. Westcott.]

and the attachment was levied by Westcott, as sheriff, on the same day, on the stock of goods and fixtures in the store. The plaintiff in this suit, Mrs. Hayes, was a sister of said Williams; and she claimed the property levied on, under a mortgage executed to her by him, which was dated April 3d, 1889, and filed for record on that day. The mortgage was given to secure the payment of two promissory notes for borrowed money, one for $600, dated November 20th, 1888, and the other for $450, dated December 1st, 1888, each payable on demand. The mortgage conveyed "all the drugs in the store, corner of Perry street and Dexter avenue, in the city of Montgomery, Alabama, now occupied by J. B. Williams as a drugstore, which may be on hand at the time demand is made for the payment of said notes; also, six show-cases," &c., describing the fixtures; and it contained a power of sale if the debt was not paid "at the time or before the same falls due." On the trial, "it was admitted that said Williams continued in the drug business after said mortgage to plaintiff, selling as usual until the attachment; also, that he was insolvent at the date of said mortgage, but that plaintiff did not know it." On these facts, the court charged the jury, on request, that they must find for the defendant, if they believed the evidence. The plaintiff excepted to this charge, and it is here assigned as error.

WATTS & SON, for the appellant, cited *Anderson v. Hooks*, 9 Ala. 704; Jones on Chattel Mortgages, §§ 350–51; *Barnett v. Fergus*, 51 Ill. 352; *Donnell v. Byern*, 69 Mo. 468; *In re Kahley*, 2 Biss. 383; 5 Dill. C. C. 116; *United States v. Bradley*, 10 Peters, 343; *Bates & Hines v. State Bank*, 2 Ala. 485; 8 East, 236.

SEMPLE & GUNTER, and C. P. DeYAMPERT, *contra*, cited Code, § 1730; *Benedict v. Renfro*, 75 Ala. 121; *Hyslop v. Clarke*, 14 John. 465; Bump on Fraud. Conveyances, 23–4, 356; *Lee v. Talcott*, 19 N. Y. 149; *DeBurski v. Paige*, 36 N. Y. 559; 5 Cowen, 547, or 15 Amer. Dec. 506; *Eborn v. McDermott*, 90 Ala. 258; *Robinson v. Elliott*, 22 Wall. 523; *Mackie v. Cairnes*, Hopk. N. Y. 373, 405; *Wiley, Banks & Co. v. Knight*, 27 Ala. 349.

McCLELLAN, J.—J. B. Williams, being engaged in the retail drug business in the city of Montgomery, and indebted to the appellant, executed to her a mortgage covering his stock in trade, and the furniture and fixtures in his store. As to the stock, the mortgage contains stipulations for the mortgagor's

[Hayes v. Westcott.]

continued possession, and power of disposition in the usual course of business. As to the fixtures, the possession is retained till the maturity of the secured debt, but no power of sale is reserved. The mortgagor, at the time of the transaction, owed other debts, but it does not appear that the mortgagee knew this; he was insolvent, but it is admitted that the mortgagee did not know it. The mortgage is confessedly void on its face as to the stock of goods. It is valid as to the fixtures, dissociated from the stipulations as to the goods. The sole question presented by this record is, whether the fact that the mortgage is *constructively* fraudulent on its face with respect to the goods, avoids it *in toto.*

The authorities on the point are numerous, and in irreconcilable conflict. The courts of last resort in three or four States have held, without qualification, that the infirmity as to one item of property infects and vitiates the entire grant. *Hyslop v. Clarke,* 14 John 464; *Russell v. Winne,* 37 N. Y. 591; *Burke v. Murphy,* 27 Miss. 167; *Sommerville v. Horton,* 4 Yerg. 541; *Claflin v. Foley,* 22 W. Va. 434; and many other cases in the States indicated. On the other hand, it has been ruled by the courts of final jurisdiction in several other States, by intermediate Federal courts, and by the Supreme Court of the United States, that such a conveyance, in the absence, as is the case here, of the infection of *actual* fraud, is bad to the extent only of the property out of which a benefit is reserved to, or a trust created to the use of, the grantor, and good as to that part of its subject-matter with respect to which no benefit is reserved and no trust is created.—*State v. Tasker,* 31 Mo. 445; *State v. D'Oench,* Ib. 453; *Donnell v. Byern,* 69 Mo. 468; *Garland v. Rives,* 4 Rand. 283, 309; *Henderson v. Hunton,* 26 Gratt. 926; *Barnett v. Fergus,* 51 Ill. 352; *In re Kahley,* 2 Biss. 383; *In re Kirkbridge,* 5 Dill. 116; *United States v. Bradley,* 10 Peters, 343. No attempt will be made to harmonize these variant adjudications. It may be well to remark, however, that the conclusion, reached in not a few of the cases referred to first above might have been put upon, and justified by, the existence of actual fraud in the transaction; but the opinions do not proceed upon that theory. This is notably true of the West Virginia and Mississippi cases; and the distinction taken in the cases last cited, between the effect of fraud in fact and fraud in law, upon conveyances of the class under consideration, appears to have been recognized, at least in equity, by Chancellor Kent in some of the earlier New York cases (*Sands v. Codwise,* 5 John. 536. 546; *Boyd v. Dunlap,* 1 John. Ch. 478); and to have been so understood by Justice Story, in *Bean v. Smith, supra.*

10

[Hayes v. Westcott.]

Mr. Jones, in his work on Chattel Mortgages, thus presents these divergent doctrines: "In New York, and one or two other States, a mortgage which is void by reason of containing provisions allowing the mortgagor to sell merchandise covered by it in the usual course of trade, is void as to every other kind of property embraced in it. . . . The fraudulent and unlawful intent of the parties can not be confined to a part of the property, but vitiates the entire instrument, although it may include lands, or other property, as to which it would be valid, if it could be regarded as a mortgage of that only, and in relation to which there was a *bona fide* intent to convey it as a security for an honest debt. But," proceeding now to state the doctrine which prevails elsewhere, "a mortgage not actually fraudulent, may be valid in part, and void in part. Such is the case when the mortgage secures a debt which is in part valid, and in part void for usury. And so a mortgage obtained under inequitable or suspicious circumstances, but not with a fraudulent intent, may be set aside in part, and allowed to stand as a security for what is due. Although a mortgage be inoperative as to a part of the property described, because it has not been acquired, it is not for that reason invalid in respect to other property which the mortgagor owned at the time of executing the mortgage. A mortgage covering a stock of goods and fixtures, although void as to the stock, by reason of the mortgagor's right to continue in possession and sell them, is held binding upon the fixtures, as to which the power of sale did not apply."—Jones Chat. Mort., §§ 350, 351.

Mr. Bump fully recognizes the doctrine which obtains in equity, that while a transaction tainted with actual fraud is absolutely void, and will not be permitted to stand for the purposes of indemnity or reimbursement; yet, where the transfer is fraudulent in law only, it will be allowed to operate as a security to the grantee for money advanced by him to pay off incumbrances, or to pay the mortgagor's debts, and the like. Bump Fraud. Convey., pp. 613, 616. And this distinction is admitted, even with respect to conveyances of the kind under consideration, at least to a limited extent, with respect to which the author, after laying down the general proposition, that "if a mortgage is made with intent to secure a part of the property to the mortgagee, and to cover the residue for the use of the debtor, it is void as to the whole. To render an instrument valid, it must be given in good faith, and without any intent to hinder or delay creditors. This can not be true when the object, as to a part of the property, is to defraud creditors," &c., continues: "When fraud, however, is imputed

from the mere omission to deliver the possession of the property to the grantee, the transfer will be good as to the articles which are delivered, although it may be void as to the residue."—*Ib*. 486-7.

The decisions of this court on the matter in hand are not such as to stand between us and the adoption of either of the views above set forth. Aside from *dicta*, there are but two cases which bear upon the point, and the tendencies of these are in opposite directions, if we are to construe them by the language of the opinions, and without reference to the particular facts of the cases. One is the case of *Ticknor v. Wiswall*, 9 Ala. 305, 311, in which Judge GOLDTHWAITE uses this language: "It is urged, however, if the conveyance is inoperative for this reason" [reservation of power to sell] "as to the personal estate, it should notwithstanding be sustained as to the real estate," as to which no such power was reserved. "The rule in this respect is, that a deed for being colorable and fraudulent as to part, is void as to the whole of the property conveyed by it. If it was otherwise, the statute would be but a sorry attempt at prevention, and the fraudulent debtor, in many cases, would attain his object." The considerations which prevent this case being a direct authority for the proposition announced in the quotation made, are, that it very clearly appeared in the evidence that the deed was tainted with an actual fraudulent purpose, participated in by both parties. The expression, *"for this reason,"* in that part of the opinion set out, and which is all that is said on the point in hand, has reference to what immediately precedes. Recurring to that, we find the following: "It is only necessary to ascertain if the admissions of the answers make out to a reasonable certainty that Ticknor (the grantor) was in failing circumstances, or, rather, on the eve of notorious insolvency. This, we think, abundantly appears from the whole case. . . . This matter is charged as a badge of fraud, and is not denied by Day (the grantee), nor does he assert his ignorance of the fact. We must, then, conclude that the mortgage was taken with a full knowledge of all the attending circumstances; and there being no evidence, or even allegation to the contrary, we consider it as exhibiting the intention to provide a means for Ticknor to carry on his business unmolested by other creditors." It appears, therefore, that while no reference is made to the distinction between actual and constructive fraud, as a part of the declaration that the instrument was void *in toto;* yet, not only might the conclusion reached have been justified on the ground that the transaction was infected with actual fraud, but the reference to that part of the opinion which

affirms the existence of actual fraud in both parties strongly inclines the mind to the inference that the learned judge predicated his announcement on the existence of fraud in fact, as distinguished from fraud in law. At least, it can not be fairly said that *Ticknor & Day v. Wiswall* is a positive and binding authority against the validity of the mortgage involved in the case at bar.

The other case, to which reference has been made, is that of *Anderson v. Hooks*, 9 Ala. 704, in the same volume, it may be noted, as that considered above, and decided by the same judges. There, it was held, unequivocally, that a deed, untainted by actual fraud, may be void in part, and good in part, not only at the common law, but by statute also. In view of the identity of the *personnel* of the court, and the fact that both cases were decided at the same term, *Anderson v. Hooks*, which recognizes and enforces the distinction between actual and constructive fraud, on a question similar to that under consideration, may well be taken *arguendo* in support of a construction of *Ticknor v. Wiswall*, which would confine its effect as authority to cases involving actual fraud on the part of the grantee. Nevertheless, *Anderson v. Hooks* is not a binding authority for the validity of the mortgage here, as to the fixtures, any more than *Ticknor v. Wiswall* is a binding authority for its avoidance *in toto*. The cases are not alike in their facts. Here, two items of property are involved, and one grantee; there, it was one item of property, and two grantees. Here, the mortgage is bad, because of an infirmity affecting only one piece of property, unless by relation; there, the mortgage was bad because of an infirmity affecting only one grantee, unless by relation. It was there held that, unless the other grantee actually, and not by mere intendment of law, participated in the fraudulent intent of the one whose debt was simulated, the instrument would be avoided as to the latter, and sustained as to the former—that it was void in part, and good in part. There are authorities, which, while holding to this doctrine, yet repudiate its application to a mortgage containing a constructively fraudulent stipulation as to a part of its subject-matter. See Bump Fraud. Convey. 487–8. And though it may be doubted whether the discrimination is a sound one, we shall concede it to be, and treat *Anderson v. Hooks*, as well as *Ticknor v. Wiswall*, as not being decisive of the point now under review.

There are other cases in Alabama which apply the equitable doctrine before adverted to, for the reimbursement or indemnity of a constructively fraudulent grantee, and deny such relief to grantees who have committed or participated in

[Hayes v. Westcott.]

actual fraud; but manifestly those cases proceed upon principles which can not obtain in a court of law, and could in no court be applied to the facts of this case.—*Potter v. Gracie*, 58 Ala. 303; *Gordon v. Tweedy*, 71 Ala. 202.

We are left, therefore, to choose between the two doctrines on principle, and unfettered by adjudications to constrain us toward either. The case we have involves no evil intent on the part of the grantee, either as a fact proved, or as a fact imputed. The law is, rather, that a conveyance reserving a benefit is void as to creditors, irrespective of the intent of the parties, or either of them, than that the fact of a reservation raises an imputation of evil intent in both. The statute, as well as the common law, seizes upon the fact of reservation, or declaration of trust, as a basis for avoidance, wholly without regard to the grantor's real purpose, and without regard to the grantee's knowledge, actual or constructive, of that purpose or participation in it. Hence it is, we think, safe to affirm that the mere fact of a reservation, standing alone, raises no presumption of bad intent in a grantee. There must be the concurrence of other circumstances. A grant by a person not indebted to others, and who does not subsequently become indebted to others than the grantee, is, of course, valid to all intents and purposes, notwithstanding it is made exclusively to the use of the grantor. So, a grant, the natural effect of which would be to hinder and delay creditors, is entirely valid, there being no creditors. It follows, that a grant to the use of the grantor, or reserving a benefit to him, does not necessarily raise an implication of bad faith in the accepting grantee, much less go to establish actual evil intent in him. To impute or show bad faith in the grantee, whether by construction merely or as a fact, it must appear, in addition to the trust created, or benefit reserved on the face of the instrument, that the grantee was charged with inquiry into the purposes of the grant, by a knowledge of the grantor's insolvency, or, at least, of the fact that he was indebted. Nothing short of this will suffice to impute to the grantee even that kind of bad intent which rests on legal presumptions.

On these principles, Mrs. Hayes, the appellant, can not be charged with any evil purpose whatever, either actual or constructive. She is not shown to have known of other debts. She is affirmatively shown not to have known of the mortgagor's insolvency. What is there, therefore, in her mind as a fact, or by imputation, to make her a *particeps crimininis* with Williams? What is the evil thing on her part to taint, like the trail of the serpent, this transaction? How can she be holden to a covinous intent, and to its all-pervading and

[Hayes v. Westcott.]

vitiating consequences, when there is not only no direct evidence of its existence, but also no evidence of any fact or circumstance from which the law would presume its existence? She can not, in our opinion, be so holden. All the cases, and all the texts, whether they adhere to the one or the other of the doctrines we have stated, proceed on the theory, that a conveyance of this sort is bad throughout, because it is *tainted*, it is *infected* by a mental condition of the grantee, which imports an element of *criminality* in the transaction. To criminality, actual evil intent is essential. To "taint," and to "infect," as those words are employed, involve, of necessity, the idea of that which is abstractly bad, and in point of fact offensive to the moral sense. The cardinal difference between those cases which hold conveyances which are void as to a part of the property void as to the whole under all circumstances, and those which require to this result the existence of actual fraud, is, that the former presume an evil purpose, a criminal design in the grantee, from the mere fact of accepting a deed containing a reservation, while the latter require *some* evidence of its existence as a matter of fact, before visiting punishment upon the grantee for entertaining it.

We can not find justification for the position first stated. Support is sought for it in the maxim which holds that all men have intended the probable consequences of their acts. This is begging the question. It is an unwarranted assumption that the act is itself evil, which it is not in the absence of notice of indebtedness or insolvency on the part of the grantor. It assumes, also, that the probable consequence of accepting such a conveyance is that creditors will thereby be hindered, delayed and defrauded, when, in truth and in fact, that result would not only not be a probable consequence of accepting the conveyance from a solvent man who owed no debts, but would be an impossible consequence. And surely the law can not, and does not, indulge the presumption, that every man who conveys to his own use, or reserves a benefit out of the thing conveyed, is insolvent, or even indebted. The presumption of an evil intent, therefore, in a grantee who accepts a conveyance of property in which a benefit is reserved, can not be indulged in the absence of some further fact than the reservation itself. Without such evil intent, the whole conveyance can not be said to be tainted and infected; the grantee can not be put in the category of a *particeps criminis* with the grantor, of whose bad purposes he was not advised, or even put on inquiry. The law, taking hold of the *fact* of the reservation in such cases, and not concerning itself with the *intent*, will annul it as to the property to which it pertains, when the

rights of creditors are involved; but, if the conveyance embraces other property which is not reserved to the grantor, but goes to the satisfaction or security of the grantee's debt, that is no constructive fraud upon other creditors ; they have nothing to complain of with respect to that property, since its disposition does not hinder, delay or defeat them in any legal or just sense, unless that disposition was in consonance, and in the effectuation of, an actual or necessarily imputed evil intent, which taints the whole transaction with actual fraud. See *McGuire v. Shelby*, 20 Ala. 456; *Western Asso. Co. v. Stoddard*, 88 Ala. 607.

The position of counsel, that, whatever may be the true doctrine at common law, under our statute, a conveyance bad as to a part of its subject-matter must be avoided *in toto*, is untenable. *Anderson v. Hooks*, 9 Ala. 704, *supra*, is directly in point against this contention. So, also, are the cases of *State v. Tasker*, *State v. D'Oench*, *Donnell v. Byern*, and *In re Kirkbridge*, *supra*, which construe a statute of Missouri, almost identical in its terms with section 1730 of the Code, to avoid, not the instrument by which property is conveyed to the grantor's use, but the alienation of that particular property as evidenced by the paper, the writing being allowed to stand as a muniment of title to any other property embraced in it. In *Anderson v. Hooks*, *supra*, the same doctrine is elaborately set forth. It is there held, that our former statute (Clay's Dig. 254), from which sections 1730 *et seq.* of the present Code have been evolved by successive codifications, without any material change in the meaning of the original act, at least so far as the point under consideration is concerned, was directed against the particular alienation, or attempted alienation, and not against the whole instrument containing a conveyance of property which was constructively fraudulent ; and that one grant evidenced by a deed or mortgage might be bad, and another might be good. The rule we apprehend to be that announced by Lord Chief Justice Gibbs, and quoted in that case, that "there is no difference between a transaction void at common law, and void by statute. If an act be prohibited, the construction to be put on a deed conveying property illegally is, that the clause which so conveys is void equally whether it be by statute or common law. But it may happen that the statute goes further, and says that the whole deed shall be void to all intents and purposes ; and when that is so, the court must so pronounce, because the legislature has so enacted, not because the transaction is illegal. I can not find in this act any words which make the entire deed void. . . . I think this grant of that interest in land which, by the terms of the

[Dolan v. Dolan.]

grant, is to be applied to a charitable use, is void; and that the deed, so far as it passes other lands, not to a charitable use, is good." To same effect are the case of *Bates v. Bank*, 2 Ala. 485, and *United States v. Bradley*, 10 Peters, 343. We accordingly hold, that, on the agreed facts in this record, the title to the fixtures was in Mrs. Hayes, and the Circuit Court erred in giving the affirmative charge against her.

Reversed and remanded.